NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MHA, LLC, d/b/a "Meadowlands Hospital Medical Center" and d/b/a "Meadowlands Hospital Rehabilitation Institute," : : : : Plaintiff, : : v. : : AETNA HEALTH, INC. and JOHN DOES : 1-10, : : Defendants. : | Civil Action No. 12-2984 (SRC)<br><br>AMENDED OPINION |

**CHESLER**, District Judge

This matter comes before the Court on Defendant Aetna Health, Inc.'s ("Defendant" or "Aetna") motion to dismiss the Complaint. (Docket Entry 8) Plaintiff MHA, LLC ("MHA" or "Plaintiff") has opposed the motion. (Docket Entry 16) The Court will rule on the papers submitted, and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will grant the motion and dismiss the Complaint with prejudice.

**I.   THE FACTS**[1]

This lawsuit arises out of a billing dispute between a hospital and a health insurance company over the rate at which the hospital should be reimbursed for services provided to the

---

[1] In a Rule 12(b)(6) motion, the Court is limited in its review primarily to the complaint and a few basic documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Accordingly, the Court's statement of the facts is derived entirely from the allegations contained in the Complaint (Docket Entry 8) and does not represent factual findings by the Court.

insurer's plan participants and beneficiaries.

Plaintiff MHA is the current owner of Meadowlands Hospital Medical Center and Meadowlands Hospital Rehabilitation Center (collectively "Meadowlands Hospital" or "Meadowlands") located in Secaucus, New Jersey. Meadowlands Hospital, founded in 1976, is an acute care facility with approximately 230 beds. Meadowlands Rehabilitation Institute is housed within Meadowlands Hospital and provides rehabilitation treatment to patients. Pursuant to an Asset Purchase Agreement ("APA"), MHA purchased Meadowlands Hospital from Liberty Healthcare System, Inc. and Liberty Riverside Healthcare, Inc. (collectively "Liberty") on December 7, 2010. Defendant Aetna is a health insurance company providing health benefits to plan participants and beneficiaries who received health care services at Meadowlands after that date.

The crux of the dispute between the parties is whether, after the December 2010 sale of Meadowlands, MHA was bound, either contractually or by operation of law, to continue to provide services to Aetna plan members and beneficiaries at the reduced in-network ("INET") rates negotiated between Aetna and Liberty. In August 1996, Liberty entered into a Managed Care Agreement ("MCA") with Aetna, pursuant to which Aetna agreed to provide INET benefits to its participants and beneficiaries who received medical services at Meadowlands. Liberty agreed to provide hospital care and other services to Aetna's plan participants and beneficiaries in accordance with a fee schedule incorporated into the MCA. The INET fee schedule generally provides for rates substantially lower than what Meadowlands would have charged as an ONET provider. The MCA was amended at various times, most recently in 2010, before MHA purchased Meadowlands.

According to Plaintiff, the APA between Liberty and MHA specifically excluded the

MCA from the list of assets being transferred.  Plaintiff maintains that, aside from the APA, which conveyed some but not all of Liberty's assets to MHA, the two entities have no legal relationship.  Plaintiff alleges that Aetna has conceded as much by denying MHA access to the MCA it now argues is binding upon it.  Plaintiff further contends that the MCA itself specifically prohibits Liberty from assigning its rights and obligations under the agreement without Aetna's prior written consent, which was neither requested nor granted.

Since the sale of Meadowlands Hospital, Aetna has continued to reimburse MHA at the INET rates provided in the MCA.  Plaintiff claims that it should be reimbursed as an ONET provider.  According to Plaintiff, the INET rates are drastically lower than what MHA receives from health insurers and other payors for the same services, typically consisting of 0-15% of the billed charges.  Plaintiff maintains that, since the onset of this dispute, Aetna has under-reimbursed MHA by over $39 million.  For its part, Aetna contends that MHA is legally bound to provide services as an INET provider and has refused to reimburse MHA for claims that exceed those allowed by the MCA fee schedule for INET providers.

Plaintiff has brought suit, asserting both federal and state law causes of action.[2]  Aetna has moved to dismiss the Complaint on a number of grounds, including that Plaintiff lacks standing to sue under ERISA.

## II.  DISCUSSION

### A.  Standard of Review

---

[2] The counts in the Complaint are as follows: (1) violation of ERISA § 502(a); (2) violation of ERISA § 502(a)(3) fiduciary duties; (3) failure to provide "full and fair review" under ERISA § 502(a)(3); (4) failure to comply with federal claims regulations under ERISA § 502(a)(3); (5) request for information pursuant to ERISA § 502(c); (6) declaratory relief relating to Aetna's violation of ERISA; (7) breach of contract and violation of the duty of good faith and fair dealing; (8) punitive damages; (9) quantum meruit; and (10) unjust enrichment.

A complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint must contain sufficient factual allegations to raise a right to relief above the speculative level, assuming the factual allegations are true. Twombly, 550 U.S. at 555; Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). The Supreme Court has made clear that "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The Third Circuit, following Twombly and Iqbal, has held that the pleading standard of Rule 8(a) "requires not merely a short and plain statement, but instead mandates a statement 'showing that the pleader is entitled to relief.'" Phillips, 515 F.3d at 234. In a Rule 12(b)(6) motion, the Court is limited in its review to a few basic documents: the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. See White Consol. Indus., 998 F.2d at 1196.

### B.    ERISA Claims

Defendant argues that Plaintiff has no power to sue under § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. It is well-established that standing to sue under ERISA § 502(a), the statute's civil enforcement mechanism, is generally limited to participants or beneficiaries of ERISA plans. 29 U.S.C. § 1132(a); Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 399-400 (3d Cir. 2004). Plaintiff, who is neither a participant nor a beneficiary, argues

that it may sue as an assignee. In short, Plaintiff alleges that it received assignments from participants/beneficiaries of ERISA-covered Aetna benefits plans that allow it to "stand in the shoes" of those patients and pursue the instant action. As this Court recognized in Franco v. Conn. Gen. Life Ins. Co., "the Third Circuit has not settled the question of standing to sue under ERISA § 502 by assignment." 818 F. Supp. 2d 792, 808 (D.N.J. 2011) (citing Pascack Valley Hosp., 388 F.3d at 401; Cmty. Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan, 143 F.App'x 433, 435 (3d Cir. 2005)). But a number of other circuits have recognized a plaintiff's right to sue under § 502 by assignment. Tango Transport v. Healthcare Fin. Servs., 322 F.3d 888, 891 (5th Cir. 2003); Morlan v. Universal Guar. Lif. Ins. Co., 298 F. 3d 609, 614-15 (7th Cir. 2002); Sys. Council Em-3 v. AT & T Corp., 333 U.S. App. D.C. 63, 159 F.3d 1376, 1383 (D.C. Circuit 1998); City of Hope Nat'l Med. Ctr. v. Healthplus, Inc., 156 F.3d 223, 226 (1st Circ. 1998); St. Francis Reg'l Med. Ctr. v. Blue Cross and Blue Shield of Kan., 49 F.3d 1460, 1464-65 (10th Cir. 1995); see also Pascack Valley Hosp., 388 F.3d at 401 (stating that "almost every circuit that has addressed the issue has ruled that a health care provider can assert a claim under § 502(a) when a beneficiary or participant has assigned to the provider the individual's benefits under the plan"). Courts within the District of New Jersey have also concluded that a provider may have derivative standing under § 502. Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., No. 06-928, 2007 U.S. Dist. LEXIS 61137, *9-10 (D.N.J. Aug. 20, 2007); Ambulatory Surgical Ctr. of N.J. v. Horizon Healthcare Servs., No. 07-2538, 2008 U.S. Dist. LEXIS 13370 (D.N.J. Feb. 21, 2008). This Court will therefore assume, as it did in Franco, "that providers may assert such a claim 'where a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan.'" 818 F. Supp. 2d at 808 (quoting

Pascack Valley Hosp., 388 F.3d at 401).

In Franco, this Court stated that, in order to confer ERISA standing upon a putative assignee, "the assignment must encompass the patient's legal claim to benefits under the plan." 818 F. Supp. 2d at 808.  The question before the Court, then, is whether Plaintiff has adequately pled that it received at least one such assignment sufficient to confer Plaintiff with ERISA standing.  Plaintiff makes a number of arguments in support of its claim to ERISA standing.  First, Plaintiff offers a narrow interpretation of Franco, seeking to distinguish it on factual grounds.  Second, Plaintiff argues that the assignment at issue in this case satisfies even a broad reading of Franco.[3]  Third, Plaintiff points to cases from within this District, the Third Circuit, and elsewhere that it suggests are contrary to Franco.  Fourth, Plaintiff argues that Defendant has waived any standing defense it may have through its conduct.  The Court will consider each of Plaintiff's arguments in turn.

The essential facts in Franco are, on their face, very similar to the facts of this case.  In relevant part, Franco involved ERISA claims brought by several ONET providers and associations whose members consisted of physicians and non-physicians who provided ONET services to patients insured by defendant CIGNA.  Id. at 803.  The defendant moved to dismiss the complaint on the grounds that the provider plaintiffs were neither "beneficiaries" nor "participants" of the ERISA covered CIGNA health plans and thus lacked standing to bring suit under § 502(a).  Id. at 807.  The provider plaintiffs argued that they had properly alleged standing

---

[3] This argument is, in all important respects, conceptually identical to a section of Plaintiff's argument seeking to distinguish Franco factually.  Accordingly, the Court will address Plaintiff's argument only in the context of whether or not Franco should be distinguished on factual grounds.

based upon "assignments" from ERISA participants and beneficiaries. Id. The complaints, which varied from each other only slightly, made allegations such as "patients sign a form assigning their health benefits . . . . in advance of treatment" and "patients sign a form fully assigning their health benefits within the meaning of ERISA." Id. at 810. The Court held that the provider plaintiffs failed to establish their standing to sue under ERISA, because their assignment allegations fell short of the requirements of Federal Rule of Civil Procedure 8(a), as construed by the Supreme Court in Iqbal and Twombly. Id. The Court stated:

> At best, the allegations provide only the most ambiguous and conclusory information about what the purported assignments entail. At worst for Provider Plaintiffs, they indicate that the assignments were limited to a patient's assigning his or her right to receive reimbursement from CIGNA for the covered portion of the service bill, which in no way can be construed as tantamount to assigning the right [to] enforce his or her rights under the plan.

Id. at 811. In Franco, the Court made clear that, in cases where a purported assignment "is limited to direct receipt of the ONET reimbursement and/or is qualified by the provider's reservation of his or her right to collect the entire charge for the service from the patient, the claim for ONET benefits . . . . continues to run to the patient-insured," and there has been no complete, standing-conferring assignment under ERISA. Id. In other words, there can be no standing-conferring assignment if the patient-insured ultimately remains "on the hook" for the services rendered.

Plaintiff seeks to distinguish Franco on three factual grounds: First, unlike the plaintiff in Franco, MHA included the language of its alleged assignment in its pleading rather than merely relying on general and conclusory allegations that an assignment existed, see 818 F. Supp. 2d at 810. Second, Plaintiff argues that the scope of the assignment at issue in this case is broader than

7

that considered in Franco.  Third, MHA argues that the danger of double recovery that existed in Franco is not present here, because MHA is the sole plaintiff in this case.

It is true that, in Franco, the plaintiffs could not establish standing in part because they failed to provide the specific language of the purported assignments.  Id.  But, as stated above, the Court also held that "the assignment must encompass the patient's legal claim to benefits under the plan."  Id. at 808.  In other words, alleging the specific language of the purported assignment is a necessary, not sufficient, condition.  A plaintiff cannot satisfy his burden to establish ERISA standing merely by quoting the language of the purported assignment in the complaint – he must allege specific facts that show that the "alleged assignments encompass the patients' rights to receive the benefits of their health plan's . . . . coverage."  Id. at 808 (citing Cmty. Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan, 143 Fed. Appx. 433, 435 (3d Cir. 2005)).  Therefore, the fact that MHA has alleged the specific contractual language on which it relies does not, by itself, bring this case outside Franco's domain.

The Court is equally unpersuaded by Plaintiff's argument that the scope of the assignment at issue here is broader than that hinted at in Franco.  There, though the complaint did not contain the language of the purported assignment, there was an indication that the patients involved had only transferred the "right to reimbursement by the insurer for an ONET service, such that the provider would submit a claim for reimbursement and the insurer would be authorized to send this payment directly to the provider."  Id. at 811.  The contract language MHA relies on provides:

> I authorize payment directly to Meadowlands Hospital Medical Center for hospital medical insurance benefits (from Medicare, Medicaid, commercial insurance, worker's compensation, auto

8

>     insurance, etc.) that I may be entitled to for the charges of the
>     care/treatment provided to me.

(Compl. ¶51) MHA argues that this authorization, unlike the one at issue in Franco, "unambiguously consists of an assignment of all of the patient's health insurance benefits, including a right to sue for those benefits." (P.'s Opp. Br. 17) (emphasis in original) MHA supports its broad construction of the provision by pointing to the phrase "might be entitled to," which it argues "contemplates an assignment of benefits beyond that of mere payment, but also of the patient's right to enforce his/her entitlement to that payment, including . . . . disputing a deficient payment directly with the insurer or via litigation." (Id.) MHA further argues that the Court's duty, under Rule 12(b)(6), to accept all factual allegations in the Complaint as true and view them in the light most favorable to the non-moving party requires the Court to resolve any doubt as to the scope of the purported assignment in favor of MHA's interpretation. But the Court does not agree that it is faced with more than one "plausible, competing interpretation[]" of the contractual language at issue. See Devcon Int'l Corp. v. Reliance Ins. Co., 609 F.3d 214, 220 (3d Cir. 2010). It is plain to the Court that the quoted General Consent/Authorization language merely authorizes an insurer to make payments to MHA directly rather than through the patient as an intermediary. See Franco, 818 F. Supp. 2d at 811. As such, this authorization is precisely the kind this Court regarded as insufficient to confer ERISA standing upon a provider in Franco.

The Court also rejects Plaintiff's contention that this case does not raise the same possibility of double recovery that concerned the Court in Franco. There, the Court stated that the plaintiffs' pleading deficiencies were "particularly glaring in light of the fact that . . . . plan subscribers also assert[ed] ERISA § 502 claims themselves seeking to recover for the very same

9

type of injuries." Id. at 811. The Court noted that "[t]he inherent tension in the pursuit of ERISA claims by both plan subscribers and providers who claim standing as assignees of the subscribers renders the need for the exact language of the applicable assignment provisions that much more crucial to sorting out the standing issue." Id. But Defendant is correct that MHA's status as the sole plaintiff in this action does not eliminate concern about double recovery and overlapping claims. In the Complaint, Plaintiff concedes that it has "balance billed"[4] Aetna's plan participants for the amount that Aetna has refused to pay. Contrary to Plaintiff's argument, recognizing MHA's standing to assert the ERISA rights of plan participants whom it has held personally responsible for balances unpaid by Aetna would pose the same threat of overlapping claims and double recovery this Court warned of in Franco.

Plaintiff also argues that following Franco would put this Court at odds with the majority of courts from around the country and within the District of New Jersey "that have repeatedly held that assignment language similar to that used here confers standing." (P.'s Opp. Br. 10)

Plaintiff relies upon Sportscare of Am., P.C. v. Multiplan, Inc., which arose in the context of a motion to remand an action initiated in New Jersey Superior Court and pleading only state law claims. 2011 U.S. Dist. LEXIS 6295, at *3 (D.N.J. Jan. 24, 2011). Magistrate Judge Falk issued a Report and Recommendation ("R&R") urging the District Court to deny remand on the grounds that the state law claims were preempted by ERISA. Id. at *15. This Court concludes that Sportscare's unusual procedural context distinguishes it from the present case. In

---

[4] In the context of the healthcare industry, balance billing is the practice by a medical provider of billing a patient for the difference between the provider's actual charge and the amount reimbursed under the patient's health insurance benefits plan. Under balance billing, the patient is financially responsible to the provider for his or her co-payment obligation under the plan, plus any amount of the actual charge that exceeds the covered amount under the plan.

Sportscare, the plaintiff arguing against the presence of a valid assignment had specifically alleged the *presence* of such an assignment in the complaint. Id. at *10. Accordingly, the Court treated the plaintiff's allegation as a judicial admission. Id. at *11. The Court stated that it would be unfair for the plaintiff, at the remand stage, to disclaim an allegation expressly made in the complaint. See id. at *11-12 ("There are strict time limits for removal, see 28 U.S.C. § 1446(b), and Defendants have a right to rely on the allegations of the complaint in removing a case, which are assumed as true for removal purposes."). The case at bar does not involve the same element of estoppel that was present in Sportscare.[5] Here, the Provider Plaintiff brought suit in federal court alleging standing as an assignee. Accordingly, Plaintiff has the burden of proving that the alleged assignments "encompass the patient's legal claim to benefits under the plan." Franco, 818 F. Supp. 2d at 808.

Plaintiff also relies upon Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., No. 06-928, 2007 U.S. Dist. LEXIS 61137 (D.N.J. Aug. 20, 2007). In Wayne Surgical, an ambulatory surgical care provider brought suit against a health care management company in New Jersey Superior Court, alleging a number of state law causes of action. Id. at *2-3. The defendant insurer removed the case to federal court, arguing, among other things, that plaintiff's

---

[5] Although Judge Martini adopted Judge Falk's R&R in full, Sportscare of Am., P.C. v. Multiplan, Inc., No. 10-4414, 2011 U.S. Dist. LEXIS 14251, at *2 (D.N.J. Feb. 10, 2011), the Court notes that, in a later case more procedurally akin to the case at bar, Demaria v. Horizon Healthcare Servs., Judge Martini expressly followed Franco to hold that "[a]t best, the allegations provide only the most ambiguous and conclusory information about what the purported assignments entail. At worst for Plaintiffs, they indicate that the assignments were limited to a patient's assigning his or her right to receive reimbursement from Horizon for the covered portion of the service bill, which in no way can be construed as tantamount to assigning the right enforce his or her rights under the plan." 2012 U.S. Dist. LEXIS 161241, at *13-14 (D.N.J. Nov. 9, 2012) (quoting Franco, 818 F. Supp. 2d at 811-12).

state law claims were preempted by ERISA.  Id. at *5.  Plaintiff moved to remand, and the Court was forced to consider whether, despite the absence of a federal claim on the face of the complaint, ERISA displaced the state law causes of action and stated a federal question.  Id. at *5.  Under the Third Circuit's decision in Pascack Valley Hosp., supra, the preemption question hinged in part on whether the plaintiff could have brought its breach of contract claim under § 502(a) of ERISA in the first instance, which in turn implicated the plaintiff's hypothetical ERISA standing.  Id. at *7.  But Wayne Surgical does little to advance Plaintiff's argument that the purported assignment in this case constitutes a complete assignment of benefits sufficient to confer Plaintiff with ERISA standing, because in Wayne Surgical, the scope of the assignment was not disputed by the parties.  Id. at *9.  Indeed, the central focus of Wayne Surgical is on the threshold question of whether ERISA allows for assignee standing, *assuming* the existence of a valid assignment.  Id. at *8-14 (following Tango Transport v. Healthcare Financial Services, 322 F.3d 888, 891 (5th Cir. 2003), to hold that ERISA benefits can be assigned because, although Congress included an anti-assignment provision pertaining to pension plans under ERISA, it did not include such a provision for health care benefits).  Therefore Wayne Surgical does not undermine this Court's conclusion that the assignment at issue in this case falls short of what is necessary to constitute a valid assignment of benefits under ERISA.

  Another recent authority relied upon by Plaintiff is Premier Health Ctr., P.C. v. UnitedHealth Group, No. 11-425, 2012 U.S. Dist. LEXIS 44878 (D.N.J. Mar. 30, 2012).  There, the Court held that the provider plaintiffs' quotation of assignment language in the complaint was sufficient to establish derivative standing to sue under § 502 of ERISA.  Id. at *19.  Plaintiff argues that the language of the assignment in Premier was similar to the purported assignment in

this case. But that is not so. Unlike the provision in this case, the assignment considered in Premier expressly stated that "THIS IS A DIRECT ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THIS POLICY." Id. at *18. Plaintiff is correct, however, that the assignment considered in Premier also contained language expressly reserving the provider's right to payment from the patient for any balance "over and above" the insurance payment. Id. Premier also casts doubt on the view that an assignment is only effective to establish derivative standing where there is a complete assignment of benefits. See id. at *20. In Franco, this Court rejected the view that a purported assignment is effective to confer standing under § 502 where it "is limited to direct receipt of the ONET reimbursement and/or is qualified by the provider's reservation of his or her right to collect the entire charge for the service from the patient." 818 F. Supp. 2d at 811. This Court respectfully disagrees with Premier to the extent it can be read as in conflict with that holding.

Plaintiff also relies heavily upon North Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins. Co., No. 10-4260, 2011 U.S. Dist. LEXIS 119762 (D.N.J. June 30, 2011), a case similar in many respects to Wayne Surgical, supra. In North Jersey Brain, a plaintiff neurosurgical medical provider brought suit against a health insurer and plan administrator in New Jersey Superior Court, alleging various state common law causes of action. Id. at *3. The defendant insurer removed the case to federal court, arguing, among other things, that plaintiff's state law claims were preempted by ERISA. Id. at *5. As with Wayne Surgical, the preemption question in North Jersey Brain implicated whether the plaintiff would have had standing to bring suit under ERISA. Id. at *10-11. The defendant insurer argued that the plaintiff provider had standing to bring suit under ERISA pursuant to patient assignments, which stated "I hereby assign to North

13

Jersey Brain & Spine Center all payments for medical services rendered to myself or my dependents." Id. at *14.  The Court held that the executed form "unequivocally establishe[d] that an assignment of the only plan benefit at issue (i.e., the benefit of reimbursement) was in fact made." Id. at *17-18.  The court went on to hold that no other legal duty supported the plaintiff provider's claim, and remand was therefore unwarranted. Id. at *25.  Judge Arleo's R&R denying the plaintiff's motion to remand was adopted by Judge Wigenton. N. Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins. Co., No. 10-4260, 2011 U.S. Dist. LEXIS 115757 (D.N.J. Oct. 6, 2011).

MHA argues that a rejection of plaintiff's standing in this case would be at odds with the reasoning in North Jersey Brain.  Defendant distinguishes North Jersey Brain on the grounds that the language of the provision considered in that case was an express assignment of benefits in a way that the provision at issue in this case is not.  While it is true that the language of the authorization at issue in North Jersey Brain has a stronger claim to status as a valid assignment, it must also be conceded that this Court's view of what constitutes a valid assignment of rights under § 502 is fundamentally at odds with the opinions of Judge Arleo and Judge Wigenton.  In particular, the Court respectfully disagrees with the view that there is "no distinction between an assignment of a right to payment and an assignment of plan benefits." 2011 U.S. Dist. LEXIS 119762 at *15.  It is only the latter that creates derivative standing in a provider assignee to sue under § 502.  Franco, 818 F. Supp. 2d at 811; N. Jersey Ctr. for Surgery, P.A. v. Horizon Blue Cross Blue Shield of N.J., Inc., 2008 U.S. Dist. LEXIS 71231, at *10-11 (D.N.J. Sept. 17, 2008); Cooper Hosp. Univ. Med. Ctr. v. Seafarers Health & Benefits Plan, 2007 U.S. Dist. LEXIS 71358, at *8-9 (D.N.J. Sept. 25, 2007).

Notwithstanding the considered opinions of other courts that may be to the contrary, this Court concludes that the authorization provision in this case does not rise to the level of an assignment of rights under ERISA. According to Black's Law Dictionary (9th ed. 2009), "assignment" is a term of art meaning the "transfer of rights or property." The Third Circuit, providing a statement of New Jersey law, held that "[a]n assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires right to such performance." In re Jason Realty, L.P., 59 F.3d 423, 427 (3d Cir. 1995) (citing Restatement (Second) of Contracts § 317 (1981) and Aronsohn v. Mandara, 98 N.J. 92, 98 (1984)). According to the leading treatise on contract law, "the elements of an effective assignment include a sufficient description of the subject matter to render it capable of identification, and delivery of the subject matter, with the intent to make an immediate and complete transfer of all right, title, and interest in and to the subject matter to the assignee." 29 Williston on Contracts § 74:3 (4th ed. 2012); see also K. Woodmere Assocs., L.P. v. Menk Corp., 316 N.J.Super. 306, 314 (App. Div. 1998) (quoting Williston for the elements of a valid assignment). A valid assignment "transfers the whole of the interest in the right." Presley's Estate v. Russen, 513 F. Supp. 1339, 1350 (D.N.J. 1981). Only an assignment that clearly reflects the assignor's intent to transfer his rights will be effective. Tirgan v. Mega Life & Health Ins., 304 N.J. Super. 385, 390 (App. Div. 1997); Restatement (Second) of Contracts § 324 (1981). Moreover, "[f]or an assignment to be created [under New Jersey law], the effect must be that the assignor retains no power to revoke the assignment." In re Fontaine, 231 B.R. 1, 4 (Bankr. D.N.J. 1999) (quoting Sheeran v. Sitren, 168 N.J.Super. 402, 414 (Law Div.1979)). In other words, as a result of a valid assignment, the

assignor loses all control over the subject matter of the assignment and all interest in the right assigned. Sheeran, 168 N.J.Super. at 414. To determine the patient-assignor's intent, the Court applies an objective standard and properly looks to the language of the intake form provision as the "strongest objective manifestation of intent." Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 76 (3d Cir. 2011); see also In re Jason Realty, 59 F.3d at 427 (holding that "[t]he precise wording determines the effect of the assignment.").

Plaintiff argues that it has standing to sue under ERISA because it received valid assignments of benefits from Aetna plan beneficiaries and participants. If Plaintiff were correct, that would mean the beneficiaries retained no legal rights to pursue Aetna for benefits regardless of what actions it took with regard to the claims. In theory, under such a scenario, if Aetna fully rejected a valid claim, only MHA would have the legal right to pursue Aetna, regardless of whether or not MHA balance billed the patient-insured. There is simply nothing in the language cited by Plaintiff that suggest that the parties intended such a full transfer to take place. Rather, the only reasonable interpretation is that the parties, for convenience, anticipated that the provider would be able to receive payment directly from the insurer without the beneficiary relinquishing his or her rights.

Finally, Plaintiff has argued that Aetna has waived, by its conduct, any defense that MHA lacks standing to pursue this action in federal court. Plaintiff argues that Aetna and MHA engaged in a claims review process for hundreds of claims, and Aetna never once asserted that MHA was not entitled to file claims on behalf of Aetna plan participants. According to Plaintiff, Aetna's omission constitutes a knowing waiver of any objection to MHA's ERISA standing. This argument deserves short shrift.

Even assuming § 502(a) permits "standing by waiver," there is nothing inconsistent about Aetna objecting to MHA's ability to sue under ERISA after having engaged with MHA in pre-suit claims reviews. Whether Aetna might somehow be estopped from refusing to recognize MHA's rights to file claims on behalf of Aetna plan participants is a separate matter entirely from whether MHA has satisfied a necessary element of an ERISA claim. Aetna's position is that the authorization form only granted MHA the right to collect reimbursements directly from Aetna but did not rise to the level of a full assignment of ERISA benefits. Not only is Aetna's position internally consistent, it is *strongly* supported by the plain language of the authorization form.

### C. State Law Claims

Defendant argues that Plaintiff's state law claims for breach of contract and violation of the duty of good faith and fair dealing (Count VII), punitive damages (Count VIII), quantum meruit (Count IX), and unjust enrichment (Count X) are fully preempted by the ERISA claims. The Court agrees.

ERISA preemption of state law causes of action is well-established. See Aetna Health, Inc. v. Davila, 542 U.S. 200, 209 (2004). ERISA § 502(a) is the statute's civil enforcement mechanism, and subsection (1)(B) expressly grants a plan participant or beneficiary the right to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has held that "the ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" Davila, 542 U.S. at 209 (quoting Metropolitan

Life, 481 U.S. at 65-66). Indeed, the statute itself contains a preemption provision. ERISA § 514(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Suits brought by participants or beneficiaries of ERISA plans concerning matters that "relate to" those plans are governed by the cause of action provided by ERISA § 502(a). Davila, 542 U.S. at 208-09.

In this case, MHA is suing not as a participant or beneficiary, but as an assignee. Nevertheless, all of the state law causes of action seek to recover the benefits to which MHA claims it is entitled under the assignors' ERISA covered plans. Clearly, the claims "relate to" the plans. See id. As such, they must be dismissed.

### III. CONCLUSION

For the foregoing reasons, the Court will dismiss the entire Complaint for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). The Court will issue an Order dismissing the Complaint with prejudice.[6]

        s/Stanley R. Chesler  
        STANLEY R. CHESLER  
        United States District Judge

DATED: February 25, 2013

---

[6] The Court notes that, to the extent that Plaintiff seeks to pursue the limited issue of whether or not it is covered by the Managed Care Agreement negotiated between Aetna and Liberty, without seeking reimbursement as an ERISA assignee, such a dispute is purely a matter of contract law and is not governed by ERISA. See Pascack Valley Hosp., 388 F.3d at 401.